UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 3:19-cv-410 (CSH) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, ROLLIN COOK, CARLETON GILES, RICHARD SPARACO, OTERO, | : | MAY 7, 2019 |
| | : | |
| Defendants. | : | |

# INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

*Pro se* plaintiff Courtney Green, currently incarcerated at Osborn Correctional Institution in Somers, Connecticut, has filed a complaint pursuant 42 U.S.C. § 1983. He names as defendants former Commissioner of the Connecticut Department of Correction Scott Semple, current Commissioner Rollin Cook, Chairperson of the Board of Pardons and Paroles Carleton Giles, Director of Parole and Community Services Richard Sparaco, and Parole Officer Otero (herein "Defendants"). Green alleges that Defendants, state actors, have acted under color of state law to deny him equal protection of the laws by treating him differently from another inmate convicted of the same offense with respect to applying earned credits to advance his parole eligibility date. As a result of this alleged violation, Green seeks damages from the Defendants in their individual capacities.

# I. STANDARD OF REVIEW

Under section 1915A of Title 28 of the United States Code, the Court must review a prisoner's civil complaint and dismiss any portion thereof that is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). "[T]he district judge's § 1915A review of whether a complaint 'fails to state a claim upon which relief can be granted' is guided by the Federal Rules of Civil Procedure, as interpreted by [United States] Supreme Court and Second Circuit decisions whose principles have become familiar." *Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016).

A *pro se* complaint is adequately pled if its allegations, liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me

accusation." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## II. BACKGROUND

On July 25, 2008, Green was charged with three counts of assault in the first degree in violation of Connecticut General Statutes § 53a-59(a).[1] On April 21, 2009, he was convicted and sentenced to a term of imprisonment of twenty years. The statute then in effect, Connecticut General Statute § 54-125a, required Green to serve not less than 85% of his sentence before becoming eligible for parole.

Effective July 1, 2011, § 54-125a was revised by Public Act 11-51, § 25. The new version of § 54-125a provided that an inmate incarcerated after October 1, 1990, who had served not less than 50% of his aggregate sentence, less any risk reduction earned credit ("RREC") earned under the provisions of section 22 of the Act, was eligible for parole. Section 22, which was codified in Connecticut General Statutes § 18-98e, authorized RREC, and provided that the eligibility of inmates to earn RREC was at the discretion of the Commissioner. A few crimes were identified as exceptions to RREC eligibility in the statute.[2] However, Green was not convicted of any of the excluded crimes.

---

[1] The charge arose from an incident on July 19, 2008, in which Plaintiff shot Jonathan Payano and two companions outside of a bar on Selleck Street in Stamford, Connecticut, during an altercation in which Plaintiff accused Payano of attempting to "pick" his pocket. The wounded men, two with shots in their legs and one with shots in his hip and hand, escaped into the bar, and Plaintiff fled the scene. Payano and his companions identified Green as the shooter for the Stamford Police, and Green was arrested on August 1, 2008.

[2] The statute excluded such crimes as capital felony, felony murder, arson murder, murder, and aggravated sexual assault in the first degree. 2011 Conn. Legis. Serv. P.A. 11-51 (H.B. 6650).

3

Even though he was convicted of a violent offense, Green was eligible to earn RREC upon satisfaction of certain conditions, including adherence to his inmate offender accountability plan, good conduct, obedience to prison rules, and participation in programs and activities. 2011 Conn. Legis. Serv. P.A. 11-51 (H.B. 6650). In addition to reducing his sentence, an award of RREC advanced Green's parole eligibility date. Doc. 1 ("Complaint"), Statement of Facts, ¶ 5.

According to the Complaint, on April 25, 2012, Commissioner Semple revised the list of crimes ineligible for RREC. *Id.*, ¶ 6. The newly added crimes included felony murder, arson murder, and aggravated sexual assault in the first degree, which the Court notes were crimes explicitly excluded in the 2011 version of § 54-125a. *Id.* Assault in the first degree, Green's crime, although a violent felony, was not added to the ineligibility list. *Id.* Green continued to earn RREC. *Id.* However, on July 1, 2013, Green received a memo signed by Chairman Giles stating that his RREC would no longer be applied to advance his parole eligibility date. *Id.*, ¶ 7.

On December 4, 2018, Green spoke with inmate Johnny Johnson (inmate #161684), who also had been convicted of assault in the first degree. *Id.*, ¶ 8. Inmate Johnson was serving an eighteen-year sentence. *Id.* Neither Green nor Johnson has a gang affiliation or has ever been charged with an assault on staff. *Id.*, ¶ 9. However, inmate Johnson's RREC continues to be applied to accelerate his parole eligibility date, whereas RREC is no longer applied to accelerate said date for Green. *Id.*

According to Plaintiff, defendant Sparaco, Director of Parole and Community Services, has instituted a policy that permits only violent offenders who committed their crimes between July 1, 2011, and July 1, 2013, to have their RREC applied to accelerate their parole eligibility dates. *Id.*, ¶¶ 5, 10. Under this policy, Green no longer has "his parole eligibility date accelerated

4

even though [he] still continues to receive RREC." *Id.*, ¶ 11. Green submitted an Inmate Request, "an inquiry about the misapplication of the law" regarding RREC and his parole eligibility date, to Parole Officer Otero, but he received no response. *Id.*, ¶ 12. Plaintiff thereafter filed an "Administrative Remedy," through which he allegedly "exhausted his administrative remedies with no interdepartmental resolution." *Id.*, ¶ 13. On March 18, 2019, Plaintiff filed this action for "denial of equal treatment amongst similarly situated prisoners" – disparate treatment from that afforded inmate Johnson. *Id.*, ¶¶ 14-15.

### III. DISCUSSION

In his Complaint, Green sets forth three claims against Defendants: (1) violation of his equal protection rights by treating him disparately from similarly situated inmate Johnson with respect to applying RREC to accelerate his parole eligibility date; Doc. 1, Count One, ¶¶ 16-18; (2) denial of equal protection of the laws by discriminating against Plaintiff in an arbitrary manner, intentionally excluding him from the application of Connecticut state law, Public Act 11-51, §§ 22, 25, while applying that law to similarly situated persons if their offenses were committed between July 1, 2011 and July 1, 2013; *id.*, Count Two, ¶¶ 19-20; and (3) failure by Defendants Semple, Cook, Giles and Sparaco to adequately supervise some or all of their subordinates to ensure that they adhere to constitutional law (*i.e.*, equal protection of laws with respect to similarly situated persons), *id.*, Count Three, ¶¶ 21-22.

**A. Counts One and Two – Violation of Equal Protection**

In both Counts One and Two, Green attempts to assert §1983 claims based on the Equal Protection Clause of the Fourteenth Amendment. In Count One, he asserts that the Defendants have acted under color of state law to violate his right to equal protection of the laws by

5

"intentionally treating [him] disparately from Johnny Johnson" under Connecticut state law even though they are similarly situated inmates. Doc. 1, ¶ 18. In Count Two, Green alleges that Defendants "discriminated against [him] in an arbitrary manner by intentionally excluding [him] from statutory laws of the State of [Connecticut]," Public Act 11-51, §§ 22 and 25. *Id.*, ¶ 20. Therefore, in both "equal protection" counts, Plaintiff alleges that Defendants have denied him equal protection of the law by applying RREC to accelerate inmate Johnson's parole eligibility date but no longer applying Green's RREC to his parole eligibility date.[3] The Court finds these claims duplicative so will review them as one combined equal protection claim.

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439-40 (1985). It protects individuals, such as prisoners, from invidious discrimination. Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *Muhmmaud v. Murphy*, 632 F.Supp.2d 171, 178 (D. Conn. 2009). In order for Green to prevail on such a claim, he must demonstrate that he was "treated differently from other similarly situated individuals and that the reason for this different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Id.* (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

---

[3] According to Plaintiff, "[o]n or about July 1, 2013, [he] was made aware via memo that his RREC [would] no longer be applied to advance his parole eligibility date." Doc. 1, ¶ 7. Plaintiff alleges that the memo was signed by defendant Giles. *Id.*

In general, equal protection claims arise from the fact that a person was treated differently because of his or her membership in a protected class. In the case at bar, Green has not asserted or alleged that he is a member of a protected class or that he was mistreated based on a suspect classification.[4] He must therefore pursue his claim based on a "class of one" theory.

In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the United States Supreme Court held that an individual may state an equal protection violation under a "class of one" theory by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. Moreover, the plaintiff must establish an "extremely high degree of similarity" with the person to whom he is comparing himself. *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). In other words, he must demonstrate the existence of a "comparator" – someone who is "prima facie identical" – who was treated differently. *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 198 (D.

---

[4] As a prisoner, Green is not a member of a suspect class. *See Lee v. Governor of the State of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996) (prisoners, "either in the aggregate or specified by offense," are not a suspect class); *Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010) (merely being a prisoner is insufficient to put plaintiff in a suspect class), *aff'd*, 449 F. App'x 51 (2d Cir. 2011).

Nor is eligibility for parole a fundamental right. In *Wright v. Malloy*, No. 3:16-CV-1179 (SRU), 2016 WL 7115933 (D. Conn. Dec. 6, 2016), the court explained that "[i]nmates have no constitutionally protected liberty interest in parole, or other conditional release from prison, prior to the expiration of a valid sentence." *Id.* at *4 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979)). In addition, the state statutes concerning parole eligibility, which are at issue here, are "expressions of the granting or withholding of legislative grace" and do not create fundamental rights. *Id.* (citing, *inter alia, State v. Andrews*, 253 Conn. 497, 512-13 (2000) (holding ineligibility for parole is not a "consequence of the withholding of legislative grace") and *Kerry v. Din*, ___ U.S. ___, 135 S. Ct. 2128, 2136 (2015) (distinguishing matter of legislative grace from a fundamental right).

Conn. 2010). *See also Davis v. Giles*, No. 3:17-CV-1176 (AWT), 2018 WL 2172717, at *6 (D. Conn. May 10, 2018) ("The plaintiff's circumstances and the other person's circumstances must be 'prima facie identical.'").

Here, Plaintiff has not challenged the constitutionality of a statute, but rather the selective application of it. To state a claim for selective enforcement of a law under a "class of one" equal protection theory, Green must allege facts demonstrating that he was treated differently from similarly situated individuals and that the reason for the disparate treatment was based on "impermissible considerations." *Diesel*, 232 F.3d at 103 (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

To name a comparator, Green has identified Johnny Johnson as a similarly situated inmate, Doc. 1, ¶ 8. He alleges that inmate Johnson was also a violent offender convicted of the same crime, assault in the first degree; Johnson is currently incarcerated at Osborn with the Plaintiff, housed in J-1 housing unit while serving an 18-year sentence; and neither Green nor Johnson has any gang involvement or disciplinary charges for assaulting staff. *Id*. Both Green and Johnson receive RREC under Public Act 11-15, § 22, but only Johnson's RREC is applied to accelerate his parole eligibility date. *Id.*, ¶ 9. Green contends that the only notable factual difference between Johnson's and Green's offense is the date of commission. *Id.* Green committed his offense in 2008; and Johnson committed his offense in 2012. *Id.* ¶¶ 1, 9.

However, upon examining Public Act 11-15 and its statutory interpretation in Connecticut, it is clear that there has been no unlawful, disparate application of the law to Green. The commission date of the inmates' offenses is a rational basis for treating Plaintiff and Johnson differently. As the Connecticut Appellate Court summarized in *Petaway v. Commissioner of*

8

*Correction*, 160 Conn. App. 727 (2015):

> [I]n 2011, the General Assembly enacted No. 11–51, § 22, of the 2011 Public Acts, later codified in General Statutes § 18–98e. This legislation provided that certain prisoners convicted for crimes committed after October 1, 1994, "may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction" for certain specified positive behaviors. General Statutes § 18–98e (a). This legislation was enacted in conjunction with a revision to § 54–125a (b) regarding parole, which provided in relevant part that a person convicted of a violent crime would not be eligible for parole consideration "until such person has served not less than eighty-five percent of the definite sentence imposed *less any risk reduction credit earned under the provisions of section 18–98e.*"(Emphasis added.) General Statutes (Rev. to 2013) § 54–125a (b). Accordingly, as of the date of the 2011 enactments, the petitioner was eligible, at the respondent's discretion, to earn risk reduction credit toward his sentence *and also toward the date of his first eligibility of parole consideration.* . . .
>
> The 2011 revision to § 54–125a (b), however, was short lived. In 2013, the General Assembly again amended § 54–125a (b). The 2013 enactment provided that a violent offender, such as the petitioner, must serve 85 percent of the definite sentence imposed before becoming eligible for parole. *See* General Statutes § 54–125a (b). The effect of this change is that the *credits that an inmate may earn toward his sentence no longer operate to advance that person's earliest parole eligibility date.* It is the change in the legislation between 2011 and 2013 that the petitioner alleges violates his constitutional protection against ex post facto legislation. We are not persuaded.

160 Conn. App. at 730-31 (emphases added).[5] As stated in *Petaway*, Conn. Gen. Stat. § 54-125a(b) was amended in 2013 to remove the language "less any risk reduction credit earned under the provisions of section 18–98e," which eliminated the benefit of application of an inmate's RREC to advance his parole eligibility date.

Furthermore, there is no constitutional right to continue that benefit post July 1, 2013, if an

---

[5] *Cert. dismissed,* 324 Conn. 912 (2017).

inmate committed his offense before the 2011 amendment created the benefit. As the appellate court stated in *Petaway,* "for a law to violate the prohibition [against *ex post facto* laws], it must feature some change from the terms of a law in existence *at the time of the criminal act*." 160 Conn. App. 727, 731-32 (emphasis added). *See also Peugh v. United States,* 569 U.S. 530, 530-31 (2013) ("The Constitution forbids the passage of *ex post facto* laws, a category including, as relevant here, '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'") (quoting *Calder v. Bull,* 3 U.S. 386, 390, 1 L. Ed. 648 (1798)).

Plaintiff alleges that "Defendant Sparaco has instituted a policy of only according violent offenders who earn [RREC] to accelerate a violent offender[']s parole eligibility date if the crimes were committed between July 1, 2011 through July 1, 2013." Doc. 1, ¶ 10. That policy is based on the dates of the enactment of the July 1, 2011 revision to § 54–125a (b), allowing RREC to be applied to advance an inmate's parole eligibility date, and the July 1, 2013 repeal of that revision. In particular, the policy is tailored to prevent violation of an inmate's right to protection from *ex post facto* penal legislation if he committed his offense during the two years when the benefit was in effect.

According to public records, Green was sentenced to a maximum of 20 years of imprisonment for assault in the first degree (with discharge of a firearm), which he committed on July 19, 2008. *See* https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending& Key =c9aa19a7-c425-4430-824d-b6eb8e2c3342. His sentence date was April 21, 2009, and his current maximum release date is 2028. With those dates in mind, and in particular the 2008 date on which he committed his offense, the effect of this 2013 amendment referenced in *Petaway* is

that the RREC credits that Plaintiff earns to reduce his sentence "no longer operate to advance [his] earliest parole eligibility date," 160 Conn. App. at 730-31. His crime was not committed between 2011 and 2013, during the two-year window in which the benefit of the RREC application to parole eligibility dates was in effect, so he has no right to protection from the 2013 amendment as an *ex post facto* law.[6]

The Connecticut Appellate Court has explicitly held that the 2013 amendment to Conn. Gen. Stat. § 54–125a (b) does not violate an inmate's constitutional protection against *ex post facto* penal legislation where both the 2011 revision (granting application of RREC to an inmate's parole eligibility date) and the 2013 amendment (removing said application) occurred *after* the inmate's criminal behavior. *See Petaway*, 160 Conn. App. at 732 (Plaintiff's claim "does not implicate the *ex post facto* prohibition because the changes that occurred between 2011 and 2013 have no bearing on the punishment to which the petitioner's criminal conduct exposed him when he committed a robbery in 2003.").

In the case at bar, Green committed his crime in July of 2008, before the 2011 and 2013 amendments were enacted. Green's case and *Petaway* are the same in principle. Like inmate William Petaway, Green's "claim is no more than a complaint that . . . after he committed [his crime] and was sentenced, favorable legislation was enacted that gave him . . . an opportunity for earlier parole consideration but that legislation was later repealed, putting him back into the same

---

[6] According to court records, Green's maximum sentence includes an additional year imposed for a misdemeanor (assault in the third degree), under Conn. Gen. Stat. § 53a-61, in July of 2009. *See* https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=1c59d8a2-6781-4279-a4c6-790364da0dc1. That crime also fell outside the 2011 to 2013 window.

position he had been in [the year he committed the crime]." 160 Conn. App. at 734.

If one compares Plaintiff's circumstances with those of Johnny Johnson (inmate # 161684 at Osborn), Plaintiff's alleged comparator, they are not identical or similarly situated for purposes of application of Public Act 11-52, §§ 22 and 25, due to the commission date of Johnson's offense. Johnson, whom Plaintiff indicates is incarcerated at Osborn, committed his crime of assault in the first degree on May 7, 2012, and was sentenced to a maximum of 18 years in December of 2013. *See* https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?sourcE=Pending&Key=aac350e7-3a54-4b3c-ad4e-51be46ddfdcf. The May 2012 date of Johnson's crime thus falls between the 2011 and the 2013 amendments to Conn. Gen. Stat. § 54–125a (b), giving Johnson a cognizable claim that his constitutional protection from *ex post facto* penal legislation would be violated by the 2013 amendment if he were not afforded the application of his RREC to his parole eligibility date.[7] Pursuant to *Petaway*, there is a valid reason for Defendant Sparaco's policy of according violent offenders (like Johnson) whose crimes were committed between July 1, 2011, and July 1, 2013, the right to have their parole eligibility dates advanced by their RREC.

Reading Green's *pro se* Complaint liberally, affording his allegations the strongest arguments they suggest, his claim for violation of the Equal Protection Clause fails to state a plausible claim based on the Defendants' lawful application of Conn. Gen. Stat. § 54-125a (b).

---

[7] *Cf. Johnson v. Comm'r of Corr.*, 258 Conn. 804, 817 (2002) ("Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed *when the crime was consummated*. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.") (emphasis added) (citations omitted).

Connecticut prison officials are legally obligated to distinguish between inmates based on the date their crimes were committed with respect to the referenced legislative amendments of 2011 and 2013. In particular, those inmates who committed crimes *after* the 2011 date that Conn. Gen. Stat. § 54–125a (b) granted the right to have earned credit applied toward parole eligibility dates, but *before* those rights were repealed, in 2013, must be afforded the benefit of the 2011 revision to avoid constitutional violations regarding *ex post facto* laws. Therefore, Johnson is not similarly situated to Plaintiff due to the different dates of their offenses. Johnson committed his offense *during the period* that RREC was permitted to advance parole eligibility dates; and Plaintiff committed his offense *before* that benefit was ever enacted. Unlike Green, Johnson holds the right to benefit from the 2011 revision to avoid violating his constitutional right to protection from *ex post facto* laws. *See Petaway*, 160 Conn. App. at 730-31.

It thus follows that Defendants applied Public Act 11-52 to Green and Johnson with a rational basis. In the absence of proof of a true comparator (*i.e.,* an inmate who committed a crime before the 2011 revision and had his RREC applied to his parole eligibility date after July 1, 2013), Plaintiff cannot state a plausible "class of one" equal protection claim. Moreover, because Counts One and Two are essentially duplicative, alleging violations of equal protection, the Court will dismiss both counts as failing to state claims upon which relief may be granted.

### B. Supervisory Liability

In Count Three, Green attempts to set forth a claim for "supervisory liability," which is also based on his allegation that he has been denied equal protection of the laws. In that claim, Green alleges that Defendants Semple, Cook, Giles, and Sparaco failed to adequately supervise some or all of their subordinates . . . to ensure that they were adhering to the laws and treatise [sic]

13

of the U.S. Constitution" and their "failure to do so subjected . . . plaintiff to arbitrary misapplication of equal protection of laws with persons similarly situated as him.[8] Doc. 21, ¶¶ 21-22.

"It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of respondeat superior does not suffice for claim of monetary damages under § 1983). Here, Plaintiff has failed to state a plausible claim for deprivation of his constitutional right to equal protection. Under Connecticut statute and case law, Plaintiff has not been treated disparately with respect to Conn. Gen. Stat. § 54–125a (b). Accordingly, his claims against officials for failing to supervise subordinates to prevent equal protection violations also fail.

In sum, Green has failed to allege sufficient facts to establish that Semple, Cook, Giles, and/or Sparaco were involved in, or even specifically aware of, any plausible disparate treatment of Green. According to the facts Green has alleged, the law was properly applied to him based on

---

[8] In the Complaint, Green lists each of the Defendants' titles: Scott Semple was "Commissioner of Correction" from 2014 to 2019, who was "responsible for overall direction, coordination and management of the Department of Correction and Parole and Community Services," Doc. 1, at 2, ¶ 2; Rollin Cook is the current Commissioner of Correction (since January 2019), who assumed "all responsibilities vacated by defendant Semple," *id.*, ¶ 3; Carleton Giles is the Chairperson of the Board of Pardons and Paroles, who was and is responsible for "adopting policies in all areas of pardons and paroles," *id.*, ¶ 4; and Richard Sparaco is the Director of Parole and Community Services, who was "responsible for serving as the administrative head of the Parole and Community Services Division," with supervisory authority over some or all of the defendants named herein, *id.*, at 3, ¶ 5.

the commission date of his offense. *See Merriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir. 1989) (to impose supervisory liability prisoner must allege that official had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act). Because Plaintiff has failed to allege sufficient facts to establish that the defendant supervisors were involved in any unconstitutional practices, Count Three for supervisory liability will also be dismissed.

## IV. CONCLUSION

In accordance with the foregoing analysis, pursuant to 28 U.S.C. § 1915A, the Court has performed its mandatory duty to screen the Complaint and hereby DISMISSES the action in its entirety. Construing the Complaint liberally, assuming the truth of the allegations and interpreting them to raise the strongest arguments they suggest, Plaintiff has failed to state any claim upon which relief may be granted. On July 1, 2013, Conn. Gen. Stat. § 54-125a (b), the statute under which Green seeks the continued benefit of applying RREC to advance his parole eligibility date, was revised to repeal that benefit. Moreover, Green has presented no evidence that said statutory provision has continued to be applied to advance the parole eligibility date of any inmate who is similarly situated (*i.e.,* who committed his offense prior to July 1, 2011).

The Court is sympathetic with respect to Plaintiff's circumstances. After committing his crime, Plaintiff was granted an advantageous right to have his RREC applied to reduce the date of his eligibility for parole. *See* Conn. Gen. Stat. §54-125(a) (Rev. July 1, 2011). Then, two short years later, the Connecticut legislature repealed that right. *Id.* (Rev. July 1, 2013). Because Green cannot claim he had that right in 2008 when he committed his crime, he cannot now argue that he must, in fairness, retain it. Those who committed their crimes during the brief window between

July 1, 2011, the date the right went into effect, and July 1, 2013, the date it was repealed, have received a fortunate opportunity to retain it due to this country's longstanding legal prohibition against *ex post facto* penal laws. *See Peugh,* 569 U.S. at 530-31; *Calder,* 3 U.S. at 390. Therefore, Defendants have a rational legal basis for treating Plaintiff and Johnson differently: the constitutional prohibition against *ex post facto* laws. *See Petaway,* 160 Conn. App. at 530-31. Accordingly, based on the commission dates of the inmates' crimes, the Defendants have implemented the appropriate policy to distinguish between inmates whose rights have been repealed, such as Plaintiff, from those whose rights cannot be denied *ex post facto*, such as Johnson.

In the absence of a true comparator or the irrational, disparate application of the law, Plaintiff has no claim for violation of his right to equal protection. Accordingly, all of Plaintiff's claims, each of which is based on an alleged violation of equal protection, is DISMISSED WITH PREJUDICE as failing to state a plausible claim.[9]  The Clerk is directed to close the file.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
May 7, 2019

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

[9] Applying leniency to *pro se* litigants, the Court often dismisses non-plausible claims in the complaint without prejudice to amendment. However, in the case at bar, the demonstrated facts prevent the possibility of a valid equal protection claim with respect to the cited statute. Dismissal is thus *with* prejudice.