UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COURTNEY GREEN,<br><br>            Plaintiff,<br>v.<br><br>SCOTT SEMPLE, ROLLIN COOK,<br>CARLTON GILES, RICHARD SPARACO,<br>OTERO,<br><br>            Defendants. | Civil Action No.<br><br>3:19-cv-410 (CSH)<br><br><br>SEPTEMBER 11, 2019 |

**<u>RULING ON PLAINTIFF'S MOTION TO REVISE PLRA DEDUCTIONS [DOC. 13]</u>**

**Haight, Senior District Judge:**

### I.  INTRODUCTION

Plaintiff Courtney Green has moved this Court to revise deductions which are currently being made from his prisoner trust fund account pursuant to the Prison Litigation Reform Act ("PLRA") under 28 U.S.C. § 1915(b).  Doc. 13.  In light of his status as an *in forma pauperis* ("IFP") litigant, Plaintiff filed a mandatory authorization for PLRA deductions to cover his $505 court filing fees in his appeal from this Court's judgment to the United States Court of Appeals for the Second Circuit.  *See Green v. Semple*, No. 19-1727, Doc. 31.[1]  As described below, the Court will deny Plaintiff's motion to revise PLRA deductions.

---

[1] As Plaintiff notes in his motion, he has five federal cases in which he has been granted IFP status: two appellate cases in the Second Circuit and three district court cases in the District of Connecticut, including the case at bar.  Doc. 13, at 1 (¶¶ 1-2).

1

## II. DISCUSSION

**A. Appellate Posture**

The Court reviews Plaintiff's motion procedurally and substantively and finds it defective on both grounds. With respect to procedural posture, the case before this Court is closed and Green has filed a notice of appeal. In performing its requisite screening duty under 28 U.S.C. § 1915A, the Court dismissed Plaintiff's action for failure to state a claim upon which relief may be granted.[2] *See Green v. Semple*, No. 3:19-CV-410 (CSH), 2019 WL 2016779, at *8 (D. Conn. May 7, 2019). Thereafter, the Court denied Plaintiff's motion for reconsideration of the dismissal, concluding that Plaintiff "has not and cannot state a plausible equal protection claim under the facts of his case," *Green v. Semple*, No. 3:19-CV-410 (CSH), 2019 WL 2358023, at *3 (D. Conn. June 4, 2019).

Following dismissal and judgment, Plaintiff filed a notice of appeal and was consequently advised that "[u]nless otherwise directed, all further filings required to be filed at the Court of Appeals must be made with the Court of Appeals in accordance with their Rules." Doc. 11. Generally, "the filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996)

---

[2] The Court notes that this dismissal may count as one strike under the PLRA's "three-strikes provision," which bars a prisoner from proceeding *in forma pauperis* after a federal court has previously dismissed three cases or appeals on the grounds that they were "frivolous, malicious, or *fail[ed] to state a claim upon which relief may be granted,* unless the prisoner is under imminent danger of serious physical injury," 28 U.S.C. § 1915(g) (emphasis added). A previous strike may have occurred when Judge Bryant dismissed Green's habeas petition in *Green v. Weir*, Case No. 3:17-cv-1637 (VLB), holding that it failed to state a plausible claim in that it was time-barred and not reviewable. Doc. 12 ("Ruling on Motion to Dismiss Petition for Writ of Habeas Corpus") (filed Feb. 15, 2018). *See also* Case No. 18-723 (Second Circuit's dismissal of appeal because no "jurists of reason would find it debatable whether the district court was correct in its procedural ruling" on the untimeliness of Green's petition).

(quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). A filed notice of appeal thus precludes the district court from ruling "on any motion affecting an aspect of the case that [is] before [the appellate court] . . . while that appeal [is] pending." *Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002). Moreover, "[a] district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (citing *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir.1988)). Divestiture of jurisdiction "is a judicially crafted rule rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." 101 F.3d at 251 (citation and internal quotation marks omitted)

Permission to proceed IFP is arguably a matter related to Plaintiff's case on appeal. Although IFP status was initially granted in his district court case, Green sought to continue his IFP status in pursuing his appeal. He thus filed his latest IFP request and related authorization for PLRA deductions in the Second Circuit. Case No. 19-1727, Doc. 20-1. As set forth *infra*, it is the simultaneous deduction of filing fees in his fifth IFP case, the pending appeal, which has led to his current motion to revise.

Via Green's signed "Authorization" on appeal, the Connecticut Department of Correction ("DOC") was authorized to make the necessary deductions under 28 U.S.C. § 1915 to recoup the total $505 appellate filing fee by "monthly installments deducted from [his] prison trust fund account." *Id.*, Doc. 20-1, 20-2. Per the statute, such deductions necessarily included the "initial partial filing fee," followed by "monthly payments of 20 percent of the preceding month's income" (for each of 5 federal cases). 28 U.S.C. § 1915(b)(1)-(2).

In addition, the "Warden's Notice of Prisoner Authorization" explicitly notified the DOC that

3

it was authorized to collect the $505 appellate filing fee: "to calculate the amounts specified by 28 U.S.C. § 1915, to deduct those amounts from Appellant's prison trust fund account (or institutional equivalent) and to disburse those amounts as directed by the United States Court of Appeals for the Second Circuit." *Id.*, Doc. 20-2. The DOC was thus required to forward the deductions "to the clerk of the court each time the amount in [Green's] account exceeds $10 until [all five] filing fees are paid." *Id.* § 1915(b)(2).

In his pending motion, Green now complains that the resulting simultaneous PLRA deductions for five cases has been a 100% (or 5 x 20%) deduction of certain amounts deposited in his prison trust fund account whenever the account balance exceeds $10.[3] In light of his pending appeal, Green's motion appears improvidently filed with this Court. Once Green filed his notice of appeal, this Court was divested of its control over aspects of the case involved in the appeal. *Griggs*, 459 U.S. at 58. Although the substance of the appeal focuses on other legal issues, the deductions related to his IFP status on appeal and the $505 filing fee may be matters connected to his appellate case. The motion will thus be denied.

**B. Substance of the Motion**

   *1. PLRA - Proceedings In Forma Pauperis, 28 U.S.C. § 1915(b)*

The Court notes that Green was granted IFP status by Magistrate Judge Garfinkel in his district court case before this Court. No. 3:19-CV-410, Doc. 5. With that in mind, assuming *arguendo* that Green's pending motion may be viewed as properly before this Court, it fails on its substance. As described below, no revisions may be granted regarding PLRA deductions from Green's prison trust fund account because the amounts deducted are dictated by 28 U.S.C. § 1915(b),

---

[3] *See* n.7, *infra*, re amounts of PLRA deductions at issue.

as interpreted by United States Supreme Court precedent.[4] When an inmate is granted leave to proceed *in forma pauperis* ("IFP"), he is mandated by statute to pay the entire filing fee. *See* 28 U.S.C. § 1915(b)(1) ("[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee."). IFP status only relieves the inmate of *prepayment* of that fee. *Id.* § 1915(b)(2) (requiring prisoner to make monthly payments of 20% of the preceding month's income toward the filing fee).

As explained by Second Circuit Chief Judge Newman, as he then was, in *Leonard v. Lacy*, 88 F.3d 181, 186-87 (2d Cir. 1996), 28 U.S.C. § 1915(b) specifies both the procedure and amounts of the PLRA deductions from a prisoner's trust fund account when that prisoner has IFP status. The deduction process is implemented in specific steps, as follows:

> The prisoner must submit a certified copy of the prisoner's trust fund account statement for the prior six months. 28 U.S.C. § 1915(a)(2). The court "shall assess and, when funds exist, collect," the initial partial filing fee. *Id.* § 1915(b)(1). Each month thereafter, the agency having custody of the prisoner "shall forward payments from the prisoner's account to the clerk of the court" in the amount of 20 percent of the preceding month's income credited to the prisoner's account "each time the amount in the account exceeds $10 until the filing fees are paid." *Id.* § 1915(b)(2).[5]

---

[4] *See* 28 U.S.C. § 1915(b)(1)-(2), as amended by PL 104–134, April 26, 1996, 110 Stat 1321 (1996). *See also Bruce v. Samuels*, __U.S. __, 136 S. Ct. 627, 632, 193 L. Ed. 2d 496 (2016), as discussed *infra*.

[5] As the United State Supreme Court summarized in *Bruce v. Samuels*:

The Prison Litigation Reform Act of 1995 provides that prisoners qualified to proceed in forma pauperis (IFP) must nonetheless pay an initial partial filing fee, set as "20 percent of the greater of" the average monthly deposits in the prisoner's account or the average monthly balance of the account over the preceding six months. 28 U.S.C. § 1915(b)(1). They must then pay the remainder of the fee in monthly installments of "20 percent of the preceding month's income credited to the prisoner's account." § 1915(b)(2).

136 S. Ct. at 627-28.

> Though subsection 1915(a)(2) imposes on the prisoner the requirement to submit a certified copy of his trust fund account statement and subsection 1915(b)(1) imposes on the court the requirement to collect the initial filing fee payment, we [the Second Circuit] believe that a court is entitled to satisfy these requirements by obliging the prisoner to submit an authorization for both tasks to be performed by the prison. Our Clerk's Office can then send a copy of the prisoner's authorization to the prison, thereby precipitating receipt of the certified copy of the trust fund account statement and the initial partial filing fee payment, as well as the subsequent payments that subsection 1915(b)(2) requires the prison to remit from the prisoner's account.

88 F.3d at 186-87. *See also Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010) ("Under the PLRA, prisoner-litigants granted *in forma pauperis* status must pay the full amount of the filing fee to the extent they can afford to, as measured by the funds in their prison accounts. 28 U.S.C. § 1915(b)(1). The fees are paid through periodic debits from the plaintiff's prison account, which are forwarded to the court by the custodial agency.") (citing 28 U.S.C. § 1915(b)(2)).

### 2. *Bruce v. Samuels*

If an inmate has more than one case in which he is proceeding IFP, the PLRA statute does not specify whether the monthly fees should be deducted simultaneously (for all cases), or sequentially (one case at a time). In 2016, the United States Supreme Court resolved this question. In *Bruce v. Samuels*, ___ U.S. ___, 136 S. Ct. 627, 193 L. Ed. 2d 496 (2016), the Court unanimously held that § 1915(b)(1) requires that filing fee obligations for multiple cases be assessed simultaneously, not sequentially. 136 S. Ct. at 632. Specifically, § 1915(b)(2) "calls for 'monthly payments of 20 percent of the preceding month's income' *simultaneously* for each action pursued." *Id.* (quoting § 1915(b)(2)) (emphasis added).

Plaintiff is aware of the Supreme Court's decision regarding simultaneous deductions, yet he moves the Court to make an exception for him.[6] Specifically, Plaintiff contends that the Connecticut DOC is "improperly deducting 100% of the Plaintiff's monies for PLRA withholdings" whenever he "receives his detail pay of $10.50" and eighty dollars when he receives a "financial gift of one hundred dollars from his family or friends."[7] Doc. 13, at 1-2 (¶¶ 3, 9). Contrary to *Bruce*, Plaintiff asks the Court to impose a 20% limit on any deduction of a deposited amount – *i.e.*, to effectively enforce a sequential approach to deductions.

However, because Green has five federal cases in which he is proceeding IFP, the *Bruce* case mandates that the DOC recoup filing fees for his five cases *simultaneously* until any and all fees are paid in full. For each case, the DOC must deduct "20 percent of the preceding month's income credited to the prisoner's account," 28 U.S.C. § 1915(b)(2). *See Bruce*, 136 S. Ct. at 632.

---

[6] Green explicitly admits that he is aware of the ruling in *Bruce*, but urges the Court not to apply it to his case. He states in his motion:

> The plaintiff does not contest the Supreme Court[']s ruling in 2016, regarding concurrent rather than consequential [sic] PLRA deductions, but contests the forfeiture of all of any monies that he receives for his PLRA obligations.

Doc. 13, at 2 (¶ 6). Plaintiff's request that this Court rule against the Supreme Court's holding in *Bruce* is not made in good faith because it is not warranted in existing law.

[7] It is unclear but possible that the $80 PLRA deduction from Green's account on 8/1/2019 was 4 times 20% of the $100 deposited because the DOC had not yet received and/or processed Plaintiff's latest "Authorization" (dated 7/19/2019) on appeal to add a fifth filing fee. *See* Doc. 13, at 4; *see also* Case No. 19-1727, Doc. 20-1, at 1. Thereafter, 100% of deposits were deducted (on 8/7/2019 and 8/15/2019) per the provisions of the PLRA. Doc. 13, at 4.

Furthermore, because there are currently five deductions at 20% (until one or more case's fees are paid), there may be 100% deductions of the preceding month's income or balance.[8]

In the one-page exhibit Green has appended to his motion, one sees PLRA amounts deducted for Green's IFP cases and the resulting balance of monies paid toward his filing fees (beginning as $356.37 on 8/1/2019 and ending with $467.52 on 8/15/2019).[9] Green presents no evidence to refute the notion that "each time the amount in the account exceed[ed] $10," the DOC deducted "up to 20% of the preceding month's income [for each case]." 28 U.S.C. § 1915(b)(2).[10] Green also provides no data for the preceding month's income. He simply points to the fact that the DOC has recently deducted the entire amount of his various deposits and argues that a "[o]ne hundred per cent deduction for PLRA is not and was not any court[']s intent nor was it [C]ongress's intent." Doc. 13, at 2 (¶ 9). Moreover, he argues that simultaneous PLRA deductions are burdensome, interfering with his ability to purchase such items as "cosmetics, envelopes, and over the counter medicines." *Id.* (¶ 4).

---

[8] The Supreme Court acknowledged this fact in *Bruce*, observing that when a prisoner has more than five IFP cases, "[n]othing will be left in the account to pay the sixth fee." 136 S. Ct. at 631. However, this event occurs rarely because, as the Government pointed out, "[m]ost prisoners . . . would accrue three strikes (and therefore be required to pay the full filing fees up[-]front) by the time they incurred the obligation for their sixth case." *Id.* at 632. In any event, the Court ultimately decided that such considerations did "not warrant a departure from the interpretation suggested by the text and context" of the PLRA statute. *Id.* at 633.

[9] Absent additional information, and although not so designated, the Court deduces that the "Account Balances" shown on the Exhibit likely reflect monies paid toward Plaintiff's filing fees because the balances increase by the amount of the deductions shown. Doc. 13, at 4.

[10] The Court notes that the "amount in the account" provision in § 1915(b)(2) has been interpreted by courts to require that either the balance or the total deposits made to the inmate's account exceed $10 at some point during the month. *See, e.g., Losee v. Maschner*, 113 F. Supp. 2d 1343, 1350 (S.D. Iowa 1998). Otherwise, an inmate could have money deposited into his account each month and spend all of it before a set collection date to avoid making PLRA payments.

In *Bruce*, the Supreme Court rejected similar arguments regarding Congressional intent and resulting hardship. As to Congressional intent, *Bruce* held that simultaneous deductions or the "per-case approach . . . better comprehends the statute" by "serv[ing] the statutory objective of containing prisoner litigation" while "ensur[ing] against denial of access to federal courts." 136 S. Ct. at 633. The Court thus rejected plaintiff Bruce's "extratextual points," finding they did "not warrant a departure from the interpretation suggested by the text and context" of the PLRA. *Id.*

As to financial hardship from simultaneous deductions, the Supreme Court noted the Government's assertion that even if such deductions "leave a prisoner without money for amenities, . . . [the] prisons are constitutionally bound to provide inmates with adequate food, clothing, shelter, and medical care, and must furnish paper and pen to draft legal documents and stamps to mail them." *Id.* at 632 (citation and internal quotation marks omitted). In addition, the Federal Bureau of Prisons ("BOP") goes beyond such requirements, providing personal hygiene items and free postage to enable inmates to maintain community ties. *Id.* Therefore, even if he lacked funds in his prison trust fund account, an IFP prisoner would have his basic needs met.

In the case at bar, Plaintiff is reminded that in all five of his federal cases, he voluntarily requested that the Court grant him IFP status so he "shall be required to pay the full amount of a filing fee" for each of these cases, 28 U.S.C. § 1915(b)(1). In requesting IFP status in his district court case, he averred that he "realize[d] that if the Court allow[ed] [him] to proceed in forma pauperis," he would "have to pay the full filing fee of $350 through installments deducted from [his] inmate trust fund." Doc. 2 ("Prisoner's Application to Proceed In Forma Pauperis"), at 1. Thereafter, in the Second Circuit, he acknowledged that he had "incurr[ed] filing fees in the amount of $505" by filing his appeal; and he signed an IFP "Authorization" which stated that he "request[ed] and

9

authorize[d] the institution holding [him] in custody to calculate the amounts specified by the [IFP] statutes, to deduct those amounts from [his] prison trust fund account . . . and to disburse those amounts to the United States District Court for the District of Connecticut." Case No. 19-1727, Doc. 18-1, 20-1.  He now must pay his filing fees as prescribed by statute and  interpreted by the United States Supreme Court in *Bruce*. The DOC's PLRA deductions from Plaintiff's trust fund account comport with § 1915(b)(2) and the Supreme Court's holding in *Bruce* regarding simultaneous deductions (the " per-case approach").  In short, no 20% limit or sequential requirement may be imposed on PLRA deductions. Accordingly, Plaintiff's motion to revise the amount of PLRA deductions from his prison trust fund account fails on its merits.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's "Motion to Revise PLRA Deductions" from his prison trust fund account [Doc. 13] is DENIED.

Signed: New Haven, Connecticut
September 11, 2019

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge